YARBROUGH *v.* ALSTON.

4-7703                                          188 S. W. 2d 621

Opinion delivered July 9, 1945.

*George O. Patterson, Edward H. Patterson* and *Carter & Taylor,* for appellant.

*J. E. Yates* and *Mark E. Woolsey,* for appellee.

SMITH, J. Prior to June, 1943, appellant Yarbrough, who operated as the Clarksville Produce Company, at Clarksville, Arkansas, had made an agreement with Brown & Loe, a brokerage firm in Kansas City, Missouri, to handle Irish potatoes for him in carload lots during the then current shipping season. Soon after this arrangement was made appellee, Ras Alston, who was in similar business at Ozark, Arkansas, and Yarbrough entered into a verbal agreement by which Yarbrough was to take potatoes in carload lots from Alston and consign them, with those of himself, to the Kansas City firm of Brown & Loe. D. C. Alston, a brother of Ras, had an interest in the potatoes to be consigned by Ras to Brown & Loe the nature and extent of which is not disclosed and is unimportant, as Ras contracted in his individual name with Yarbrough, and D. C. Alston was unknown in the transaction.

The testimony is sharply conflicting as to the terms under which Yarbrough was to handle the potatoes, but whatever the agreement may have been it is undisputed that Ras Alston shipped to Brown & Loe ten cars of potatoes, and this suit was brought to recover what Alston alleges was the balance due on the agreed price.

In response to a motion to make the complaint more definite and specific, Alston amended his complaint to allege the name and numbers of the railroad cars in which the potatoes had been shipped and the quantity of potatoes and the grade thereof shipped in each car. The case is much simplified by a stipulation entered into as the trial began reading as follows: ''It is stipulated at the time of the trial by both parties that the plaintiffs actually shipped all the cars of potatoes with the cars, number of sacks and grades set forth in plaintiffs' amendment to complaint.'' This stipulation renders it necessary only to consider the terms under which the shipments were made, and upon this issue the court gave, without

objection from either party, an instruction reading as follows:

"Instruction 'A'

"Gentlemen of the jury, plaintiffs, Ras Alston and D. C. Alston, bring this suit against Bill Yarbrough for an amount which they claim is due them under a contract entered into between them and Yarbrough in June, 1943, during the Irish potato season, under which contract they claim that defendant agreed to pay them on ten (10) different cars of potatoes shipped by them for the defendant different sums of money per 100-pound sack of potatoes ranging from $2.50 per sack for Grade 'A' potatoes and $1.50 per sack for Grade 'B' potatoes. The plaintiffs contending that under the contract they bought and shipped for the defendant potatoes at the contract rate amounting to $6,960, and that the defendant has paid to the plaintiffs the sum of $4,701.72, leaving a balance due the plaintiffs of $2,258.28, for which sum the plaintiffs ask for judgment against the defendant. The defendant admits entering into a contract with the plaintiff, Ras Alston, under the terms of which plaintiff was to ship for the defendant potatoes at the prices per sack set forth in plaintiff's complaint, but the defendant contends that under the terms of the contract these potatoes were to be procured and shipped by the plaintiff to Brown & Loe brokerage company of Kansas City, Missouri, from where they would be sent out to wholesalers or consumers on order of Brown & Loe Company, and that under the terms of the contract the prices which the defendant, Yarbrough, agreed to pay the plaintiff were subject to classification and grading of the potatoes by the ultimate purchaser of the potatoes, and that the prices which the defendant agreed to pay the plaintiff at the rate per sack were subject to deductions for shortages in weight, grading and classification and condition of the potatoes upon arrival at the destination, and that under the contract the plaintiff agreed to accept the proceeds which the potatoes brought on a basis of the price per 100 pounds less the deductions and less any lesser amount which might be paid in settlement by reason of grading by Brown & Loe Company and the ultimate purchaser.

"Defendant further contends that when the potatoes which were procured and shipped by the plaintiff for him to Brown & Loe Company, were shipped in that he received settlement from Brown & Loe in the amount of $4,648.78 in the form of a check of Brown & Loe Company, and that the settlement with Brown & Loe Company on the cars of potatoes shipped by the plaintiffs had certain deductions for shortages in weight, lower grading than the grading made by the plaintiffs as set forth in their complaint and unusable condition of the potatoes when they reached the ultimate buyer, and that the defendant and the plaintiff under the terms of the contract as contended by the defendant entered into a settlement for all sums of money due the plaintiff under the contract from the defendant, and that the defendant delivered to the plaintiff for all of the potatoes shipped by the plaintiff the check of Brown & Loe Company of $4,648.78 together with the defendants' personal check of $52.94 marked in the lower left-hand corner 'Balance on B & L potato deal,' and that the plaintiff accepted the check of Brown & Loe Company for $4,648.78 and the defendant's check for $52.94 in full settlement and payment for all potatoes shipped by him for the defendant and in full settlement of all sums of money due him under the contract.

"These make up the issues for you to try."

We copy this instruction in full as it states the issues upon which the case was tried and the theory of each of the parties in regard thereto.

According to Alston, his original agreement with appellant was that he was to be paid $2.50 per sack for Grade "A" potatoes and $1.50 per sack for Grade "B" potatoes, and certain shipments were made under that agreement, which was later modified, on account of a decline in the market price of potatoes, by a reduction in the price to Alston of 15 cents per sack on both grades, and subsequent shipments were made at the modified price. According to Alston, he was not interested in or concerned about the price which Yarbrough received for the potatoes, whose profit would have been the excess over the price which he agreed to pay Alston.

Yarbrough admits the agreement to pay the prices stated, but contends that these prices were subject to certain deductions for shortages in weight and lower grading of his potatoes than that recited in the amended complaint.

The instruction above copied states the conflicting contentions and submits for the jury's determination the truth thereof. Testimony was offered by each party to support their respective contentions. If Alston is correct, Yarbrough made a very improvident contract; but we are not concerned with the preponderance of the testimony. However unreasonable Alston's testimony may now appear to be, it was and is legally sufficient to support the verdict of the jury in his favor.

Yarbrough interposed as a defense the plea of accord and satisfaction. According to his testimony, the check from Brown & Loe for $4,648.78 was received and indorsed and delivered to Alston, but the check lacked $52.94 of being sufficient in amount to pay Alston on the basis of the settlement between Yarbrough and Alston, and Yarbrough gave Alston his personal check for $52.94 in full satisfaction and payment of the balance due. Alston admits receipt of this check, but denies that it was given or received as payment in full of the balance due, but was received as a credit upon that sum.

This check for $52.94 was offered in evidence, and contains the notation in the lower left-hand corner: "Bal. on B & L Pot. deal." And, according to the testimony offered in Yarbrough's behalf, was written there before the delivery of the check to evidence the fact that it was given in full and complete satisfaction of the balance due Alston.

Upon this issue the court gave an instruction at the request of Yarbrough reading as follows:

"II.

"You are instructed that where a check is given in satisfaction of a disputed claim, and is marked or recites on its face that it is a payment in full, of a balance on an

account, and is accepted, constitutes what the law calls an accord and satisfaction and amounts to a discharge and settlement of any liability under a contract. If you find from preponderance of the evidence in this case that the defendant, Yarbrough, gave to the plaintiff, Alston, his check on which it was recited on its face that it is payment in full of a balance under the contract and that said check was accepted and cashed by the plaintiff, Alston, then you are instructed that the plaintiff cannot recover in this lawsuit and that your verdict should be for the defendant, Yarbrough. The fact, if you find it a fact, that the plaintiff, Alston, at the time said check was given to him protested that it was not all that was due him, still if he accepted said check and cashed same, he would be bound by his acceptance and cannot recover in this lawsuit and your verdict should be for the defendant, Yarbrough.''

Yarbrough was not entitled to an instruction more favorable than the one given. But the testimony as to the notation on the check is as sharply conflicting as is the testimony as to the conditions under which Yarbrough disposed of Alston's potatoes. According to Alston the notation was not on the check when it was written and delivered. It is admitted that this notation was written with a different pen from the one used in writing the body of the check. Yarbrough offers the explanation that after writing the check with his own pen he used one belonging to Alston in writing the notation above copied. This Alston denies, his testimony being that he had no pen when the check was written.

It is apparent that this appeal from a judgment in Alston's favor presents two questions, both questions of fact: First, what was the contract under which Yarbrough handled the potatoes? Second, was there an accord and satisfaction? Both these questions were submitted to and were decided by the jury in Alston's favor, and as the testimony is legally sufficient to support the jury's finding we must affirm the judgment based thereon, whatever our opinion may be as to the preponderance of the evidence. The judgment is affirmed.